UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LESTER WELCOME,                                  :
                                                 :   MEMORANDUM & ORDER
                          Petitioner,            :
                                                 :       17-CV-3374 (ENV)
        -against-                                :
                                                 :
                                                 :
JAMIE LAMANNA,                                   :
                          Respondent.            :
                                                 :
------------------------------------------------------------------x
VITALIANO, D.J.

   This is a proceeding for a federal writ of habeas corpus brought by a prisoner held pursuant to a state court judgment and subject to the requirements and restrictions of 28 U. S. C. §2254(d). The convictions that are the subject of this petition are rooted in a nightmare odyssey: the prolonged sexual abuse of several very young female victims, all with some form of familial relationship to petitioner. For the reasons that follow, the writ is denied and the petition is dismissed.

## Background[1]

   Lester Welcome's convictions stem from his sexual abuse of his stepdaughter, step-niece, and step-granddaughter, which occurred, respectively, during the periods from 1996 to 1999, 2003, and 2010. Dkt No. 11-1 at 6–10. Welcome married Eugenie Bailey in 1995, who had

---

[1] Since Welcome was convicted, the facts are recited in the light most favorable to the verdict. *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

three children from a prior marriage: Nidia Guthrie, C.B., and one other.  *Id.* at 5.  T.F. was Bailey's niece and Guthrie and C.B.'s cousin.  *Id.*  In 2003, Nidia married Cleve Lawrence, with whom she had two children, including K.L.  *Id.*

C.B. was six years old in 1996 and between May and July, Welcome gave her piggyback rides, during which he slipped his finger under her clothes and put it inside her vagina.  Dkt No. 13-4 at 7–8.  Beginning in 1997, when C.B. was seven years old, Welcome would enter C.B.'s bedroom at night and put his mouth on her vagina.  *Id.* at 14.  Several months later, he came into her room and put his penis in her vagina.  *Id.* at 14–15.  The intercourse occurred four times a week over a three-year period.  *Id.*  at 40–42.  C.B. did not notify anyone about these events because she was a child and "didn't really know what to do."  *Id.* at 17.   The assaults ceased when C.B. was around ten years old and "started developing [physically]."  *Id.* at 17–18. When C.B. was 13 or 14 years old, she told Guthrie, who was 27 at the time, that "something had happened between her and" Welcome because Guthrie was taking C.B. to her first gynecologist appointment.  *Id.* at 18.  At trial, Guthrie testified that she chose not to report this information at the time because C.B. had begged her not to tell anyone as she did not want to interfere with her mother's relationship, and that the gynecologist had told her that 14-year old C.B. was "not a virgin."  Dkt. 13-3 at 181, 226, 180.

In the summer of 2003, T.F., who was 12 years old, spent several weekends at petitioner's apartment (he was her step-uncle), where she would sleep side by side with her

2

cousin C.B. Dkt. 13-4 at 63–64. At night, T.F. felt someone with large, rough hands touch her legs and press two fingers on her vagina over her clothing. *Id.* at 65–66. She suspected it was Welcome. *Id.* at 64–66. T.F. remained awake one night to see who was touching her. *Id.* at 67. She then felt somebody "caress[] [her] leg" and then "press[] on [her] vagina," and saw Welcome. *Id.* That day, T.F. told her godfather, Guthrie's husband, Cleve Lawrence, about the incident, who told her that "he would handle it." *Id.* at 69. Lawrence spoke to T.F.'s mother who "didn't want to do anything about it." Dkt. 13-3 at 235. Lawrence testified that the family would be embarrassed if there was a "break in the family" and he did not report to the police. *Id.*

In the summer of 2010, K.L., six years old at the time, was living with her father Lawrence and brother in New Jersey. *Id.* at 126. After the school year ended in late June, K.L.'s parents arranged for her to live with her step-grandfather Welcome, grandmother Bailey, and mother Guthrie in Brooklyn for the summer. *Id.* at 127–28. K.L. alleged that on three occasions across three consecutive days between June 27 and July 19, 2010, Welcome touched K.L.'s vagina over her clothing. *Id.* at 130–31, 134–35, 138–40. The first incident occurred when K.L. asked Welcome for a piggyback ride. *Id.* at 131–32. On the second day, Welcome again touched K.L.'s vagina while giving her a piggyback ride. *Id.* at 134–35. Although K.L. was "not happy" during the first two incidents, she did not tell anybody about them because she wanted to see if Welcome would do it again. *Id.* at 134, 136. On the third day, the same assault occurred. *Id.* at 138–40. K.L. testified that immediately thereafter, she told her mother. *Id.* at

3

141. Testifying differently, Guthrie recalled that K.L. told her about these alleged incidents around midnight on July 18. *Id.* at 173–74. The next day, July 19, Guthrie called Lawrence to pick the children up and told him what K.L. had told her. *Id.* at 174–75. That same night, Guthrie also told C.B. because she remembered that C.B. had said that "something happened to her." *Id.* at 175.

Guthrie waited 11 or 12 days to report her daughter's accusations to the police and received counseling at work to walk her through the reporting process. *Id.* at 176, 194. C.B. accompanied Guthrie to report the incidents to the police, where C.B. then reported her own allegations. Dkt. 13-4 at 26. T.F. also reported her allegations to the police after learning that K.L. and C.B. had reported their allegations. *Id.* at 70. Detective Reginald Griffin of the NYPD interviewed K.L. and C.B. on July 31, 2010, and arrested Welcome on August 3, 2010. Dkt. 13-4 at 89, 92-93.

The trial commenced on July 11, 2012 and lasted for three days in Kings County Supreme Court. Dkt. 13-3 at 1; Dkt. 13-4 at 1; Dkt. 13-5 at 1. The People called Dr. Anne Meltzer, an expert in the field of child abuse, who testified that disclosure of sexual abuse can be delayed because children are often abused by somebody who is in a position of authority over them. Dkt No. 13-4 at 117.

The defense theme was that Welcome had been wrongly accused. In his summation, defense counsel contended that the People had not presented credible evidence to prove

4

Welcome's guilt beyond a reasonable doubt. Dkt No. 13-5 at 30–32. Defense counsel pointed to inconsistencies in the complainants' testimonies. *Id.* at 32. He questioned, *inter alia*, whether a doctor had told Guthrie that C.B. was not a virgin at age 14. *Id.* at 35. He also pointed to Welcome's passport, which indicated that Welcome was out of the country for periods of time during the three alleged incidents. *Id.* at 40–42.

The prosecutor opened her summation forcefully, arguing: "Do you know who was innocent? [K.L.]. She was only six years old when the defendant [assaulted her]. Who was innocent? [C.B.]. She was six to nine years old when this defendant . . . destroyed her innocence . . . And you know who else was innocent? [T.F.] who was only 11 years old when [he assaulted her]." Dkt No. 13-5 at 56. The prosecutor then contended that the complainants' testimonies supported Welcome's guilt. *Id.* at 61–63. Ending her summation, the prosecutor urged the jury to convict Welcome, reiterating that he "destroyed the innocence of three young little girls;" "betrayed the trust that these young girls placed in him;" and "violated their sense of family . . . [and] self-worth." *Id.* at 109–10. Defense counsel did not object to these portions of the summation.

The trial court submitted ten counts to the jury: course of sexual conduct against a child in the first degree (as to C.B.), course of sexual conduct against a child in the second degree (as to T.F.), five counts of sexual abuse in the first degree (as to C.B. and K.L.), two counts of sexual abuse in the second degree (as to T.F.), and one count of endangering the welfare of a

5

child (as to T.F.). Dkt No. 11-1 at 22. The jury acquitted Welcome of course of sexual conduct against a child in the second degree and one count of sexual abuse in the second degree (both counts concerning T.F.) and convicted him of the remaining counts. Dkt. 13-5 at 189–90. Welcome was sentenced to a prison term of 20 years and ten years of post-release supervision. Dkt No. 13-5 at 211–12. Welcome appealed the conviction and sentence to the Appellate Division, Second Department.

On direct appeal, the Appellate Division affirmed. *People v. Welcome*, 128 A.D.3d 990 (2d Dep't 2015). The Appellate Division rejected the claim that Welcome was denied the right to a fair trial, finding that Welcome waived this contention. *Id.* at 990–91. The court also rejected the claim that Welcome was denied the effective assistance of counsel. *Id.* at 991. Welcome's remaining unpreserved contention was not reviewed by the court. *People v. Welcome*, 128 A.D.3d at 991. On March 14, 2016, leave to appeal to the New York Court of Appeals was denied. *People v. Welcome*, 27 N.Y.3d 970, 56 N.E.3d 911 (2016).

On March 6, 2017, Welcome sought a writ of error *coram nobis* from the Appellate Division based on an ineffective assistance of appellate counsel claim, which was denied on May 11, 2017. *People v. Welcome*, 153 A.D.3d 1436, 60 N.Y.S.3d 696 (2d Dep't Sept. 27, 2017). On June 1, 2017, Welcome filed his original pro se petition for a writ of *habeas corpus*. Dkt No. 1. In this petition, Welcome raised both claims he presented on direct appeal. On October 12, 2018, the petition was stayed to allow exhaustion of several claims which Welcome intended

to raise in a motion to vacate his judgment pursuant to CPL § 440.10.  Dkt No. 20 at 2.  In a *pro se* motion filed on December 5, 2018, Welcome moved pursuant to CPL § 440.10 to vacate his convictions on several grounds, including ineffective assistance of counsel, a time bar on his prosecution for Endangering the Welfare of a Child, and actual innocence.  Dkt No. 20 at 2–3.  On April 26, 2019, the Supreme Court denied Petitioner's motion and rejected all of his claims.  *Id.* at 3.  The Appellate Division denied leave to appeal.  *People v. Welcome*, App. Div. Dkt No. 2019-08608 (2d Dep't Aug. 26, 2019).

Concurrently, in a second pro se motion filed on August 18, 2018, Welcome moved for a writ of error *coram nobis* based on the ineffective assistance of counsel claim.  The Appellate Division denied Welcome's motion on January 16, 2019, finding "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Welcome*, 168 A.D.3d 889, 89 N.Y.S.3d 920 (2d Dep't 2019).  On October 7, 2019, Welcome amended his *habeas* petition in this Court to formally add the claims raised in his CPL § 440.10 motion.  Dkt No. 18.

## Standard of Review

Post-conviction federal *habeas* relief is governed by the overarching reach of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Generally, AEDPA gives deference to state courts applying controlling precedents of the U.S. Supreme Court to resolve federal constitutional claims raised by state prisoners.  *See Gutierrez v.*

*McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004).  This deferential review is accorded to any state court decision disposing of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision.  *Harrington v. Richter*, 562 U.S. 86, 98–99, 131 S. Ct. 770, 784, 178 L. Ed. 2d 624 (2011).

Given these ground rules, *habeas* jurisprudence is tightly confined.  In that regard, a state court decision is "contrary to clearly established federal law" if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000).  A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  Even erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review.  *Id.* at 411.

Discussion

I.    Inadmissible Evidence

Welcome claims that he is entitled to habeas relief because the improper admission of outcry testimony denied him due process of law and a fair trial.  Welcome contends, *inter alia*, that C.B.'s complaint to Guthrie about the alleged events four years after they occurred was not prompt outcry and was inadmissible. Dkt. 18-1 at 17–18.  Welcome also alleges that the

8

testimony that an unnamed doctor told Guthrie that 14-year old C.B. was "not a virgin" was hearsay. *Id.* at 22. On direct appeal, the Appellate Division rejected these claims, finding that Welcome waived them by eliciting similar testimony on cross-examination. *People v. Welcome*, 128 A.D.3d 990, 990-91 (2015).

Petitioner fails to cobble together a federal constitutional claim rooted in his hearsay-related contentions. *See Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial") (citing *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). Petitioner makes no showing of pervasive error. In fact, the Second Department noted inquiries by the defense exploring the very same or closely related facts during cross. *Welcome*, 128 A.D.3d at 990–91. As a result, the court held that this defense strategy acted as a waiver of any evidentiary objection petitioner might have had on this score by operation of New York's appellate rules. In any event, the procedural default in state court renders this claim unexhausted and procedurally defaulted here as a result. *Beard v. Kindler*, 558 U.S. 53, 55, 130 S. Ct. 612, 614, 175 L. Ed. 2d 417 (2009) (internal quotation omitted). The petition, similarly, offers nothing that would excuse Welcome's default. *Martinez v. Ryan*, 566 U.S. 1, 10, 132 S. Ct. 1309, 1316, 182 L. Ed. 2d 272 (2012) ("A prisoner may obtain federal review of a defaulted

9

claim by showing cause for the default and prejudice from a violation of federal law."). The writ cannot issue on this ground.

## II. The Prosecution's Summation

Welcome further contends that the prosecutor's statements made in summation at trial impermissibly bolstered the complainants' testimony and violated his constitutional rights. Dkt No. 18-1 at 23. Citing to CPL § 470.05, the Appellate Division declined to review this contention because Welcome had failed to preserve this claim by raising a contemporaneous objection at trial. *People v. Welcome*, 128 A.D.3d 990 at 991. The contemporaneous objection rule is an independent and adequate state law that bars federal habeas review. *Id.*; *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011). Because Welcome failed to preserve his bolstering claims, review is precluded.

## III. Ineffective Assistance of Trial Counsel

Welcome contends that his prosecution for the Endangering the Welfare of a Child charge with regard to T.F. was statutorily time-barred and that defense counsel's failure to seek dismissal of this count on timeliness grounds deprived him of effective assistance of counsel. Dkt No. 18-1 at 33–34. On direct appeal, the Appellate Division denied his ineffectiveness claim. *People v. Welcome*, 128 A.D.3d 990, 991 (2d Dep't 2015). Rebuffed but undeterred by the Appellate Division's ruling, petitioner raised the claim in his CPL § 440.10 motion, which was again rejected. Dkt No. 18-1 at 48, 60.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that this "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Both prongs of the *Strickland* test must be met for the claim to succeed. *Id.* at 700. The representation must fall below an "objective standard of reasonable" and "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 688, 690.

Welcome's ineffective assistance of counsel claim fails the *Strickland* test on both prongs. "A lawyer's decision not to pursue a defense does not constitute deficient performance if . . . the lawyer has a reasonable justification for the decision." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005). Trial counsel's failure to seek dismissal of the misdemeanor count was a strategic decision that resulted in a substantially favorable outcome for Welcome, because the jury acquitted Welcome of two felony counts with regard to T.F. and convicted him only of two misdemeanor counts. Dkt. 13-5 at 189-90. Welcome has failed to overcome the strong presumption that counsel acted reasonably. *See Strickland*, 466 U.S. at 690–91. It further appears from the record that defense counsel's intended ploy did succeed in avoiding conviction on to separate felonies that would likely have been treated more severely at sentencing. Moreover, and perhaps of greater legal significance, the state courts found on the merits that trial counsel's performance was not ineffective. *Welcome*, 128 A.D.3d 990; Dkt. 18-1 at 56. That

11

determination is entitled to AEDPA deference. *Gutierrez*, 389 F.3d at 304. Welcome has certainly provided nothing, much less offered "clear and convincing" evidence that the ruling of the state courts was erroneous. 28 U.S.C. § 2254(e)(1). This claim, too, fails.

Petitioner identifies what he deems is another shortfall in his trial counsel's defense, claiming that he was denied effective assistance of counsel because his trial counsel failed to use his passports to fully substantiate the claim that Welcome was in Jamaica during the time periods of certain charged crimes. Dkt. 18-1 at 46. This claim was rejected by the state courts following a merits review and that determination is entitled to AEDPA deference. Dkt. 18-1 at 61; *see, e.g.*, *Williams*, 529 U.S. at 412–13. As with his assignment of ineffectiveness for failing to assert a statute of limitations defense, Welcome has failed to show that the state court applied the *Strickland* standard in an objectively unreasonable manner and his claim cannot prevail.

IV. Actual Innocence

Finally, Welcome argues that his actual innocence entitles him to habeas relief. But, even with a proffer of new evidence, a claim of actual innocence based on newly discovered evidence does not state a ground for federal habeas relief absent an independent constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993); *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012). Welcome offers nothing, much less new evidence, amounting to a claimed constitutional violation. His free-standing actual innocence claim is, therefore, not cognizable as a free-standing basis for relief. *See Djenasevic v. New*

*York*, No. 17-CV-6366 (MKB), 2019 WL 653153, at *5 (E.D.N.Y. Feb. 15, 2019), *certificate of appealability denied*, No. 19-538, 2019 WL 8138589 (2d Cir. Sept. 5, 2019).

Conclusion

In line with the foregoing, the writ of *habeas corpus* is denied, and the petition is dismissed.

Since Welcome has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of the order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.
Dated: Brooklyn, New York
       July 31, 2020

                                                             */s/ Eric N. Vitaliano*
                                                              ERIC N. VITALIANO
                                                              United States District Judge